UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JAMES TEPPERWIEN,**

                *Plaintiff,*

- *vs* -

**ENTERGY NUCLEAR OPERATIONS, INC., TEAMSTERS UNION-LOCAL 456, VITO MESSINA,**

                *Defendant.*

Civil Action No. 07-CV-0433
(CLB-MDF)

## STATEMENT OF MATERIAL FACTS

In support of its Motion for Summary Judgment, Defendant, Entergy Nuclear Operations, Inc. ("Entergy"), by and through its attorneys, Hiscock & Barclay, LLP, in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, submits this Statement of Material Facts as to which it contends there is no genuine issue to be tried:

1.    Entergy owns and operates several nuclear power plants located throughout the northeastern United States, including the Indian Point Unit 2 and Indian Point Unit 3 plants located at the Indian Point Energy Center ("IPEC") in Buchanan, New York.  (Deposition of James Tepperwien ("Tepperwien Dep."),[1] p. 40, ln. 17 – p. 41, ln. 12; Affidavit of Grace Sanseverino in Support of Entergy's Motion for Summary Judgment, dated March 31, 2008 ("Sanseverino Aff."), ¶ 3).

2.    Indian Point Unit 3 is a 980-megawatt pressurized water reactor which began operation in August 1976 ("Indian Point 3").  (Sanseverino Aff. ¶ 4).

---

[1] Copies of relevant excerpts and exhibits from the deposition of Plaintiff James Tepperwien, conducted on November 16, 2007, are attached as Exhibit 5 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

SYLIB01\602181\1

3.  Entergy purchased Indian Point 3 from the New York Power Authority ("NYPA") in November 2000. (Deposition of Grace Sanseverino ("Sanseverino Dep."),[2] p. 35, ln. 5 – 7; Sanseverino Aff. ¶ 5).

4.  Prior to the acquisition by Entergy, security at Indian Point 3 was provided by Security Officers employed by NYPA and represented by the International Brotherhood of Teamsters, Local 456 ("Teamsters Local 456"). (Sanseverino Aff., ¶ 6; Tepperwien Dep. p. 38, ln. 9 – ln. 16 ).

5.  At the time Entergy acquired Indian Point 3, it offered employment to the Security Officers who had been employed by NYPA and assumed the collective bargaining agreement with Teamsters Local 456. (Sanseverino Aff., ¶ 7).

6.  Indian Point Unit 2 is a 970-megawatt pressurized water reactor which began operation in August 1974 ("Indian Point 2"). (Sanseverino Aff. ¶ 8).

7.  In September 2001, Entergy acquired Indian Point 2 from Con-Edison. (Sanseverino Dep. p. 35, ln. 7-9; Sanseverino Aff. ¶ 9).

8.  In February 2002, Plaintiff James Tepperwien ("Plaintiff") began working as a Security Officer for Wackenhut Services, Inc. ("Wackenhut"), which contracted with Con-Edison and, subsequently, with Entergy to provide security services with respect to Indian Point 2 and certain owner controlled areas at IPEC. (Tepperwien Dep. p. 32, ln. 11 – ln. 12; p. 37, ln. 19 – p. 39, ln. 13; p. 40, ln. 7 – ln. 16; Sanseverino Dep. p. 34, ln. 10 – ln. 17; Sanseverino Aff. ¶ 10).

---

[2] Copies of relevant excerpts from the transcript of the deposition of Grace Sanseverino, conducted on December 18, 2007, are attached as Exhibit 6 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

9. Following the acquisition of Indian Point 2, Entergy began integrating the security operations at IPEC. (Sanseverino Aff. ¶ 11; Tepperwien Dep. p. 39, ln. 23 – p. 40, ln. 6).

10. In connection with the integration of the security operations, Wackenhut employees employed as Security Officers were interviewed for employment with Entergy. (Tepperwien Dep. p. 45, ln. 9 – p. 47, ln. 14).

11. Plaintiff applied for, was offered, and accepted employment with Entergy effective March 31, 2003 and, at that time, became a member of Teamsters Local 456. (Sanseverino Aff. ¶ 12 ; Tepperwien Dep. p. 30, ln. 18 – p. 31, ln. 5 ; p. 47, ln. 2 – p. 48, ln. 7; p. 51, ln. 2 – p. 52, ln. 16; 57, ln. 6 – ln. 12; Ex. 6; Ex. 7).

12. Entergy is an equal opportunity employer. (Sanseverino Aff., ¶ 13; Ex. 1).

13. All of Entergy's managers receive training regarding their obligations under Entergy's employment policies, including Entergy's obligations under applicable employment laws. (Sanseverino Aff., ¶ 15; Ex. 4).

14. Pursuant to Entergy's Harassment Prevention Policy, harassment in the workplace is prohibited and all employees must report any instances of harassment. (Sanseverino Aff. ¶ 14; Ex. 2; Ex. 3; Tepperwien Dep. p. 86, ln. 6 – p. 89, ln. 3; Ex. 10; Deposition of Stephen K. Hoffman ("Hoffman Dep."),[3] p. 19, ln. 11 – p. 20, ln. 7).

15. All Entergy employees receive training regarding Entergy's Harassment Prevention Policy. (Sanseverino Aff. ¶ 16; Tepperwien Dep. p. 76, ln. 24 – p. 77, ln. 17; p. 86,

---

[3] Copies of relevant excerpt from the transcript of the deposition of Stephen K. Hoffman, conducted on November 19, 2007 are attached as Exhibit 7 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

ln. 7 – p. 88, ln. 5; Deposition of Alfred K. Hicks ("Hicks Dep."),[4] p. 30, ln. 8 – p. 31, ln. 21; Hoffman Dep. p. 19, ln. 11 – p. 20, ln. 7).

16. Entergy provides its employees with various avenues to report claims of inappropriate conduct or harassment.  (Sanseverino Aff. ¶ 16; Sanseverino Dep. p.10, ln. 7 – p. 11, ln. 21; Tepperwien Dep. p. 86, ln. 7 – p. 89, ln. 1; Hicks Dep. p. 19, ln. 19 – p. 23, ln. 11; Hoffman Dep. p. 20, ln. 20 – p. 21, ln. 24; p. 28, ln. 24 – p. 29, ln. 24; Deposition of Steven Radomski ("Radomski Dep."),[5] p. 21, ln. 10 – ln. 17).

17. Employees can report inappropriate behavior to their supervisor or manager.  (Sanseverino Aff. ¶ 17; Tepperwien Dep. p. 88, ln. 6 – p. 89, ln. 3; Sanseverino Dep. p.13, ln. 3 – ln. 12; Hoffman Dep. p. 20, ln. 20 – p. 21, ln. 24; Radomski Dep. p. 21, ln. 15 – ln. 16).

18. Employees can report harassment or inappropriate conduct to Human Resources.  (Sanseverino Aff. ¶ 18; Sanseverino Dep. p. 10, ln. 7 – ln. 20; p. 13, ln. 3 – ln. 12; Tepperwien Dep. p. 88, ln. 12 – ln. 18; Hoffman Dep. p. 29, ln. 11 – ln. 16; Hicks Dep. p. 23, ln. 6 – ln. 11).

19. Employees can report any concerns or inappropriate behavior through Entergy's Employee Concerns Program.  (Sanseverino Aff. ¶ 19; Ex. 5; Tepperwien Dep. p. 88, ln. 6 – ln. 18; p. 91, ln. 2 – p. 92, ln. 14; Sanseverino Dep. p. 10, ln. 21 – p. 12, ln. 3; p. 13, ln. 3 – ln. 12; Hicks Dep. p. 21, ln. 25 – p. 22, ln. 22; Hoffman Dep. p. 20, ln. 20 – p. 21, ln. 5; Radomski Dep. p. 21, ln. 18 – ln. 20).

20. Entergy employees can also report inappropriate behavior through Entergy's online reporting system or through an Entergy provided Ethics hotline for reporting harassment

---

[4] Copies of relevant excerpts from the transcript of the deposition of Alfred K. Hicks, conducted on November 19, 2007 are attached as Exhibit 8 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

[5] Copies of relevant excerpts from the transcript of the deposition of Steven Radomski, conducted on December 19, 2007 are attached as Exhibit 9 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

and other inappropriate conduct. (Sanseverino Aff. ¶ 20; Hicks Dep. p. 31, ln. 22 – p. 32, ln. 13; Hoffman Dep. p. 20, ln. 20 – p. 21, ln. 24; p. 28, ln. 24 – p. 29, ln. 20; Radomski Dep. p. 21, ln. 10 – ln. 17).

21. Bargaining unit employees, such as Plaintiff, also have the option of making complaints to their union steward or filing a grievance. (Sanseverino Aff. ¶ 21).

22. In addition, Employees also have the option of reporting complaints directly to the Nuclear Regulatory Commission ("NRC"). (Sanseverino Aff. ¶ 22; Hicks Dep. p. 60, ln. 22 – ln. 24; Tepperwien Dep. p. 92, ln. 15 – p. 93, ln. 2; Hoffman Dep. p. 17, ln. 15 – ln. 21).

23. All Entergy managers receive training regarding Entergy's employment policies, including Entergy's obligations under applicable employment laws, and Entergy's Human Resources representatives receive specific training regarding their obligations under Entergy's Harassment Prevention Policy, including how to investigate complaints of inappropriate conduct. (Sanseverino Aff. ¶ 15; Ex. 4; Sanseverino Dep. p. 15, ln. 13 – p. 16, ln. 13).

24. In November 2004, Plaintiff spoke to Teamsters Local 456 Chief Steward Patrick O'Hara regarding an alleged incident involving another IPEC Security Officer, Vito Messina. (Tepperwien Dep. p. 153, ln. 16 – p. 154, ln. 7; Deposition of Patrick O'Hara ("O'Hara Dep."),[6] p. 8, ln. 12 – ln. 20).

25. Mr. O'Hara immediately contacted Stephen Downes, Entergy's Human Resources Manager at IPEC, to inform him of the incident and to schedule an appointment for Plaintiff to speak to a Human Resources representative. (Tepperwien Dep. p. 154, ln. 6 – ln. 24; O'Hara Dep. p. 10, ln. 4 – ln. 15).

---

[6] Copies of relevant excerpts from the transcript of the deposition of Patrick O'Hara, conducted on December 18, 2007, are attached as Exhibit 10 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

26. Plaintiff was interviewed by Grace Sanseverino, a Senior Human Resources Representative. (Tepperwien Dep. p. 158, ln. 3 – p. 162, ln. 13; Sanseverino Dep. p. 16, ln. 14 - p. 17, ln. 9; p. 18, ln. 5 – p. 22, ln. 2; Sanseverino Aff., Ex. 6).

27. During that interview, Plaintiff complained that Mr. Messina had grabbed Plaintiff's buttocks from behind. (Sanseverino Dep. p. 16, ln. 14 – p. 17, ln. 9; p. 18, ln. 5 – p. 22, ln. 2; Tepperwien Dep. p. 158, ln. 3 – p. 162, ln. 13; Sanseverino Aff., Ex. 6).

28. Plaintiff requested that his complaint remain anonymous. (Sanseverino Dep. p. 21, ln. 17 – p. 23, ln. 17; p. 24, ln. 21 – p. 25, ln. 8; Sanseverino Aff. Ex. 6; Tepperwien Dep. p. 160, ln. 23 – p. 161, ln. 5).

29. Pursuant to Entergy's Harassment Prevention Policy, Entergy immediately conducted an investigation of the incident reported by the Plaintiff. (Sanseverino Aff. ¶ 27; Ex. 6; Sanseverino Dep. p. 21, ln. 17 – p. 23, ln. 17; Tepperwien Dep. p. 158, ln. 3 – p. 162, ln. 13).

30. Ms. Sanseverino spoke with the Security Manager, Terrence Barry, and interviewed Mr. Messina and several other Entergy Security Officers to determine whether anyone had knowledge of the alleged incident. (Sanseverino Dep. p. 28, ln. 9 – p. 31, ln. 17; Sanseverino Aff., Ex. 6; Deposition of Vito Messina ("Messina Dep."),[7] p. 66, ln. 22 – p. 68, ln. 7).

31. Mr. Messina denied ever engaging in any inappropriate conduct. (Sanseverino Dep. p. 30, ln. 25 - p. 31, ln. 6; Sanseverino Aff., Ex. 6; Messina Dep. p. 66, ln. 22 – p. 67, ln. 6, p. 71, ln. 6 – ln. 9).

---

[7] Copies of relevant excerpts from the transcript of the deposition of Vito R. Messina, conducted on December 21, 2007, are attached as Exhibit 11 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

32. None of the other employees who were interviewed could corroborate Plaintiff's allegations nor had they witnessed any inappropriate behavior within the Security Department. (Sanseverino Dep. p. 30, ln. 7 – p. 31, ln. 17; Sanseverino Aff., Ex. 6).

33. At the time of Plaintiff's November 2004 complaint, Security Officer Messina had been employed at IPEC for approximately 24 years, with no history of alleged harassment or disciplinary action. (Sanseverino Aff. ¶ 29; Ex. 6; Barry Dep. p. 22, ln. 3 – ln. 10; O'Hara Dep. p. 29, ln. 23 – p. 30, ln. 17).

34. Although Plaintiff's allegations were not substantiated, Ms. Sanseverino, nonetheless, recommended that several actions should be taken as a result of receiving Plaintiff's report of inappropriate conduct. (Sanseverino Aff. ¶ 30; Ex. 6; Sanseverino Dep. p. 32, ln. 17 - p. 37, ln. 15; Barry Dep. p. 27, ln. 17 – p. 29, ln. 6).

35. First, all IPEC security officers were required to read and sign a memorandum reinforcing Entergy's no tolerance policy regarding discrimination, harassment and retaliation. (Sanseverino Aff. ¶ 31; Ex. 7; Tepperwien Dep. p. 182, ln. 6 – p. 183, ln. 5; Ex. 13; Sanseverino Dep. p. 33, ln. 7 - p. 36, ln. 12; Barry Dep. p. 28, ln. 2 – ln. 21; Hicks Dep. p. 38, ln. 9 – p. 39, ln. 22; Hoffman Dep. p. 32, ln. 7 – p. 33, ln. 14).

36. Second, all IPEC Security Officers were required to attend mandatory training which included review of Entergy's Harassment Prevention Policy. (Sanseverino Aff. ¶ 32; Ex. 7; Tepperwien Dep. p. 177, ln. 19 – p. 181, ln. 20; Sanseverino Dep. p. 33, ln. 7 - p. 36, ln. 12; O'Hara Dep. p. 12, ln. 17 - p. 13, ln. 8; Messina Dep. p. 83, ln. 12 – p. 84, ln. 9; Hicks Dep. p. 36, ln. 15 – p. 37, ln. 25).

37. Entergy also decided to fill the non-supervisory assistant weapons instructor position to which Mr. Messina had been temporarily assigned at the time of the alleged incident

with a supervisor who was then given, together with a fire range master, responsibility for the firing range. (Barry Dep. p. 22, ln. 19 – p. 23, ln. 6; Sanseverino Dep. p. 36, ln. 13 - p. 37, ln. 15; Messina Dep. p. 62, ln. 3 – ln. 23).

38. Plaintiff did not make any further complaints regarding Security Officer Messina between November 2004 and August 2005. (Tepperwien Dep. p. 186, ln. 9 – p. 187, ln. 20; Sanseverino Aff., ¶ 27).

39. In August 2005, Plaintiff reported to his supervisor, John Cherubini, that, while riding in a security vehicle, Mr. Messina touched Plaintiff's hair and told Plaintiff that he had found things about him to be "attractive." (Tepperwien Dep. p. 195, ln. 9 – p. 196, ln. 21; Ex. 14).

40. Immediately upon receiving this report, IPEC Security management conducted an investigation of the allegations made by Plaintiff. (Deposition of Terrence Barry ("Barry Dep."),[8] p. 35, ln. 2 – p. 37, ln. 12; Tepperwien Dep. p. 198, ln. 8 – ln. 20).

41. John Cherubini interviewed Security Officer Messina, who denied "coming on" to Plaintiff but admitted touching Plaintiff's hair. (Messina Dep. p. 86, ln. 22 – p. 93, ln.15; Barry Dep. p. 35, ln. 9 – p. 37, ln. 12).

42. Mr. Cherubini reported the incident to his supervisor, Terrence Barry, Entergy's Manager of Security. (Barry Dep. p. 24, ln. 16 - p. 26, ln. 5).

43. Mr. Messina was immediately placed on an administrative leave. (Barry Dep., p. 35, ln. 9 - p. 36, ln. 3; Messina Dep. p. 98, ln. 18 – p. 100, ln. 4; Tepperwien Dep. p. 199, ln. 2 – ln. 6; O'Hara Dep. p. 15, ln. 16 - p. 17, ln. 2;).

---

[8] Copies of relevant excerpts from the transcript of the deposition of Terrence Barry, conducted on January 8, 2008, are attached as Exhibit 12 to the Affidavit of Alan R. Peterman, Esq., dated March 31, 2008, submitted in support of Entergy's Motion for Summary Judgment.

44. Mr. Barry also sent a memorandum to Entergy's Fitness for Duty Officer, Sharon Quinn, documenting the alleged incident, as well as Plaintiff's prior allegations of harassment and recommending that Officer Messina be "referred out" for mandatory psychological evaluation to make sure that he was fit for duty as a Nuclear Security Officer. (Barry Dep. p. 36, ln. 5 – p. 37, ln. 12; Sanseverino Aff. ¶ 33; Ex.8).

45. Licensed operators of nuclear power plants, like Entergy, are highly regulated by the federal NRC and are required to implement a Fitness For Duty ("FFD") program pursuant to 10 C.F.R. Part 26. (Sanseverino Aff., ¶ 23).

46. As part of Entergy's FFD Program, all of Entergy's Security Officers are required to undergo extensive psychological evaluations prior to and throughout their employment. (Tepperwien Dep. p. 55, ln. 13 – ln. 23; Sanseverino Dep. p. 46, ln. 12 - 18).

47. It is Entergy's policy, consistent with the NRC's FFD program requirements, that all employees notify their supervisors of any problems, such as mental stress, fatigue or illness that may affect their fitness for duty. (Sanseverino Aff., ¶ 24).

48. One of the primary tools to implement the FFD program are the behavior observations by managers and supervisors pursuant to Entergy's Behavioral Observation Program and Unescorted Access Authorization Program. (Hicks Dep. p. 18, ln. 14 – p. 20, ln. 9).

49. It is the policy of Entergy, consistent with the NRC's requirements, that all employees must make a report to a supervisor or the Security Department if the employee notices unusual behavior, suspects substance abuse by another employee, or otherwise believes that another employee is not fit for duty. (Sanseverino Aff., ¶ 25; Tepperwien Dep. p. 80, ln. 22 – p. 81, ln. 16; Hoffman Dep. p. 15, ln. 11 – p. 17, ln. 21; Hicks Dep. p. 18, ln. 14 – p. 20, ln. 9).

50. If a FFD report is made, a referral is made to the site Medical Department, which administers the FFD program. (Sanseverino Aff., ¶ 26).

51. Mr. Messina was not allowed to return to work until he completed the psychological evaluation confirming that he was fit for duty. (Sanseverino Aff. ¶¶ 32, 33; Ex. 8; Barry Dep. p. 36, ln. 5 – p. 37, ln. 12).

52. In October 2005, Mr. Barry met with Plaintiff, two union representatives, Mr. O'Hara and Mr. Hicks, and a member of management, Tim Redfern, to inform the Plaintiff and his Union representative that Security Officer Messina would be returning to work. (Tepperwien Dep. p. 209, ln. 6 – ln. 17; Barry Dep. p. 37, ln. 16 – p. 39, ln. 20).

53. Plaintiff was not satisfied and wanted Security Officer Messina to be fired. (Tepperwien p. 214, ln. 7 – ln. 10).

54. At the time Security Officer Messina returned to work, Mr. Barry met with Mr. Messina and issued him a Letter of Discipline which emphasized compliance with Entergy's Harassment Prevention Policy, including refraining from any type of inappropriate behavior in the workplace, and informed Mr. Messina that failure to comply would result in termination from employment. (Sanseverino Aff. ¶ 35; Ex. 9; O'Hara Dep. p. 15, ln.16 - p. 17, ln. 2; Messina Dep. p. 104, ln. 25 – p. 105, ln. 11; p. 111, ln. 21 – p. 112, ln. 9).

55. In January 2006, Plaintiff made a complaint to the NRC regarding Security Officer Messina. (Tepperwien Dep. p. 242, ln. 25 – p. 243, ln. 13; p. 245, ln. 2 – p. 246, ln. 23; p. 248, ln. 3 – p. 251, ln. 17).

56. In early 2006, the Plaintiff also contacted Entergy's Employee Concerns Coordinator, Barbara Taggart, regarding several concerns, including a claim that he had been

subject to retaliation in connection with a counseling that had been issued to him and another Security Officer. (Tepperwien Dep. p. 269, ln. 7 - p. 270, ln. 13; p. 271, ln. 10 – ln. 25; Ex. 16).

57.  On March 6, 2006, following the investigation of Plaintiff's employee concerns complaint, Ms. Taggart issued a memo to Plaintiff informing him of the results of her investigation, including the fact that the counseling that had been issued to him would be withdrawn. (Tepperwien Dep. p. 277, ln. 12 – p. 279, ln. 3; Ex. 19).

58.  In connection with Plaintiff's report to Entergy's Employee Concerns Program, Plaintiff completed a "Customer Satisfaction Survey" in which he noted, among other things, that he was comfortable raising his concern to the Employee Concerns Representative; the Employee Concerns Representative was receptive to Plaintiff's concern; the Employee Concerns Representative provided Plaintiff with adequate opportunity to communicate his concern; the investigation of Plaintiff's concern was performed thoroughly and professionally; Plaintiff was satisfied with the response he received to his concerns; and Plaintiff would use the Employee Concerns Program again. (Tepperwien Dep. p. 279, ln. 8 – p. 281, ln. 17; Ex. 20).

59.  Entergy never received any other complaints of alleged unlawful harassment regarding Mr. Messina, who continues to be employed by Entergy, from any other individual, either prior to or since Plaintiff's allegations. (Barry Dep. p. 22, ln. 3 – ln. 10; p. 30, ln. 5 – ln. 9; p. 39, ln. 21 – ln. 25; Sanseverino Dep. p. 40, ln. 15 – p. 41, ln. 22; O'Hara Dep. p. 29, ln. 23 - p. 31, ln. 5; Hicks Dep. p. 19, ln. 15 – ln. 24; Tepperwien Dep. p. 217, ln. 12 – ln. 21).

60.  Plaintiff never reported either of the alleged incidents involving Mr. Messina to any police agency nor did he seek an order of protection against Mr. Messina. (Tepperwien Dep. p. 206, ln. 18 - p. 208, ln. 20).

61. Plaintiff did not think that Messina was a homosexual but, rather, thought that Messina was "crazy." (Tepperwien Dep. p. 300, ln. 16 – ln. 17).

62. By letter dated September 3, 2006, Plaintiff informed Entergy of his resignation from employment and provided two-weeks notice of his resignation. (Tepperwien Dep. p. 304, ln. 19 – p. 305, ln. 13; Ex. 24).

63. In a "Separating Employee Survey" completed by Plaintiff, he noted, among other things, that he was leaving Entergy's employment due to better or more flexible work hours with a new employer; he would consider working for Entergy again in the future; he had a good working relationship with his supervisor and was able to give and receive feedback; lack of flexibility in his work schedule was a factor in his decision to leave Entergy; and overall he was satisfied with his job at Entergy. (Tepperwien Dep. p. 310, ln. 20 – p. 311, ln. 11; Ex. 25).

Dated: March 31, 2008

**HISCOCK & BARCLAY, LLP**

 /s/ Robert P. Heary
Robert P. Heary, Esq.  (RH1364)
Office and Post Office Address
1100 M&T Center
3 Fountain Plaza
Buffalo, New York  14203
Telephone:  (716) 856-5400
Facsimile:  (716) 856-0139
E-mail:  rheary@hiscockbarclay.com

Alan R. Peterman, Esq.  (AP1698)
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York  13202-2078
Telephone (315) 425-2775
Facsimile: (315) 425-8575
E-mail:  apeterman@hiscockbarclay.com

*Attorneys for Defendant*
*Entergy Nuclear Operations, Inc.*